IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| BRENDA GRAHAM, | § |
| | § |
| | § CIVIL ACTION NO. 5:19-cv-83 |
| | § |
| Plaintiff, | § |
| | § JURY DEMANDED |
| VS. | § |
| | § |
| NAVISTAR INTERNATIONAL | § |
| CORPORATION AND | § |
| NAVISTAR, INC., | § |
| Defendants. | § |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff BRENDA GRAHAM ("**Plaintiff**") complains of Defendants NAVISTAR INTERNATIONAL CORPORATION and NAVISTAR, INC. (together, "**Navistar**") as follows:

### NATURE OF THE ACTION

1. Plaintiff purchased a 2011 model year Navistar vehicle equipped with Maxxforce Advanced Exhaust Gas Recirculation ("**EGR**") diesel engines (the "**Maxxforce Engine**" or "**Engine**").

2. Plaintiff complains of Navistar's (i) failure to disclose, and active concealment of, the defective emissions system (i.e., the "**EGR System**") designed and incorporated into the Maxxforce Engine, which causes widespread Engine damage and repeated Engine failures, and (ii) Navistar's failure to properly repair the defective EGR systems during and/or outside the warranty period. Navistar trucks equipped with the defective EGR Systems in their Engines are not as represented by Navistar, and worth less than the price Plaintiff paid, and what it would have been worth at resale with a non-defective engine. In other words, Plaintiff, did not receive the benefit of her bargain.

3. Navistar trucks containing the defective EGR Systems in their Engines were (and continue to be) sold under the International brand name, and include (i) International Prostar and Lonestar heavy duty, long haul tractor trailer trucks, (ii) International Transtar heavy duty, regional haul trucks, (iii) International Workstar and Paystar severe duty trucks used for construction applications (e.g., dump trucks), and (iv) International Loadstar severe duty cab forward trucks (e.g., garbage trucks and airplane refueling trucks). The above trucks containing defective EGR Systems in the Engines collectively will be referred to as the "**Navistar Trucks**" or "**Trucks**."

4. All of the Navistar Trucks are U.S. Department of Transportation Class 7 and 8 trucks, the largest, heaviest, and most powerful trucks on the road.

5. The defective Maxxforce Engines have failed, or are substantially certain to fail, well before their intended and expected useful life. Plaintiff has repeatedly repaired the Engine due to damage caused by EGR System at her own expense.

6. Plaintiff's Truck now sits inoperable due to EGR System failure that caused extensive damage to her Truck's Engine.

7. Adding insult to injury, because of the widespread impact of the defective EGR System, Navistar repair facilities are backlogged, thereby causing substantial Truck downtime, and causing Plaintiff, to suffer lost revenue, lose a major contract, and and incur out-of-pocket expenses she otherwise would not incur, such as paying, idle drivers while they wait for the Truck to be repaired.

8. The defective EGR System also renders the Maxxforce Engines unreasonably dangerous at the time they were purchased. The defective EGR System can cause, and has caused, sudden breakdowns, forcing Navistar Trucks, often heavily loaded with cargo, to attempt

emergency maneuvers. The defective EGR System also causes coolant and exhaust fumes to enter the passenger compartment of the Trucks, elevating the risk of driver poisoning from the fumes.

9. When Navistar Truck owners and lessees, including Plaintiff, have presented the Trucks for repair Navistar has failed to properly repair the defective EGR System and/or offered to replace the defective EGR System with another equally defective and failure-prone system.

10. Navistar's above-described wrongful actions, inaction and/or omissions constitute breach of the implied warranty of merchantability, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, fraud and fraudulent concealment, consumer fraud and/or the violation of deceptive trade practices consumer protection statutes, and/or money had and received/assumpsit.

11. Plaintiff seeks to recover from Navistar her (i) actual, consequential, incidental and/or statutory damages, (ii) punitive damages, (iii) pre- and post-judgment interest, (iv) attorneys' fees, litigation expenses, court costs, and (v) such other relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a), because (a) Plaintiff is a citizen and resident of the State of Texas, (b) Defendants are citizens of the State of Delaware, with their principal place of business in Lisle, Illinois, (c) this is a civil matter where the matter in controversy exceeds $75,000 excluding interest and costs.

13. Venue is appropriate in this district and division because, at all relevant times, Navistar resided, was found in, had agents, and/or conducted business in the Eastern District of Texas (and continues to do so). A substantial portion of the acts giving rise to the claims alleged herein occurred in the Eastern District of Texas. Accordingly, venue is proper in the Eastern

District of Texas under 28 U.S.C § 1391(b). This Court has *in personam* jurisdiction over Navistar because at all relevant times, Navistar was found, had agents, and/or conducted business in the Eastern District of Texas and has availed itself of the business and legal benefits of the State of Texas.

## PARTIES

14. Plaintiff is an individual residing in Texarkana, Texas.

15. Defendant Navistar International Corporation is a corporation organized under the laws of the State of Delaware, with its principal place of business in Lisle, Illinois. Navistar International Corporation is the parent corporation of Defendant Navistar, Inc. Navistar International Corporation has 16,500 employees; its fiscal year 2013 revenue was $10.775 billion. Navistar International Corporation's Trucks, products, parts, and services are sold through a network of nearly 1,000 dealer outlets in the United States, Canada, Brazil, and Mexico and more than 60 dealers in 90 countries throughout the world. Navistar International Corporation may be served with Summons and a copy of this Original Complaint and Jury Demand by serving its (i) registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136, or (ii) any Navistar International Corporation officer at 2701 Navistar Drive, Lisle, IL 60532, its principal place of business, via the Texas long-arm statute by service on the Texas Secretary of State.

16. Defendant Navistar, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Lisle, Illinois. Navistar, Inc. is a wholly owned subsidiary of Defendant Navistar International Corporation, and manufactures International brand commercial trucks, MaxxForce brand diesel engines, IC Bus school and commercial buses, Workhorse brand chassis for motor homes and step vans. Navistar, Inc. also is a private label

designer and manufacturer of diesel engines for the pickup truck, van and SUV markets. Navistar, Inc. may be served with Summons and a copy of this Original Complaint and Jury Demand by serving its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

## BACKGROUND FACTS

17. In 2000, the U.S. Environmental Protection Agency ("**EPA**") announced that it would impose new, strict emissions standards on trucks manufactured for the 2010 model year forward (the "**2010 EPA Standards**"). Every commercial truck manufacturer in the United States except Navistar chose to meet the 2010 EPA Standards by incorporating Selective Catalytic Reduction ("**SCR**") exhaust systems into their engines. SCR exhaust systems treat engine exhaust with a urea-based chemical after it leaves the engine.

18. Navistar, however, chose a different technology to meet the 2010 EPA Standards, incorporating Exhaust Gas Recirculation ("**EGR**") exhaust systems into its engines, which reduces emissions by subjecting exhaust flowing out of the engine to a second burn in the cylinders. Navistar's EGR System diverts some of the exhaust into a cooler, which uses ordinary engine coolant to lower the exhaust temperature. The cooled exhaust is then fed back into the Engine's air intake through the EGR System valves.

19. While many commercial truck and passenger engines use EGR systems of some kind, no manufacturer had ever produced an engine that recirculates such a large percentage of engine exhaust into the cylinders. Because of the additional recirculated exhaust, Navistar's Advanced EGR system generated far more heat within the Engines than in the SCR engines manufactured by Navistar's competitors.

20. Navistar's Advanced EGR systems cannot handle the amount of heat and pressure they generate, leading to broken EGR valves, exhaust leaks that melt and destroy other engine components, and EGR cooler failures—which send uncooled exhaust gas back into the Engine (causing the computer to shut down the engine).  The defective EGR System also can cause the EGR cooler to leak coolant through the EGR valves into the Engine.  The added stress of non-flammable coolant pushing out the exhaust valves in the cylinder heads destroys the head gaskets, thereby requiring the engine to be rebuilt.

21. Early on, Navistar's competitors, the industry press, and other observers began to suspect that the use of the Advanced EGR system would neither meet the 2010 EPA Standards, nor lead to reliable engines.

22. Navistar responded with numerous, repeated false public statements that its engines would meet the 2010 EPA Standards, the Advanced EGR system was a "proven technology," the engines would be just as reliable and durable as its earlier engines, and Navistar Trucks equipped with the Advanced EGR system would have a "much higher residual value" on the used truck market than trucks equipped with SCR.

23. At the same time Navistar was making these false public statements, Navistar and its officers were outspoken critics of SCR, calling it a "marooned technology" that would ultimately be abandoned by all manufacturers in favor of Advanced EGR technology.

24. Navistar knew its Advanced EGR system was seriously flawed at least as early as 2004 when Navistar's 6.0-liter diesel engines were used in various 2004 model year Ford vehicles. Ford faced an unprecedented number of complaints with Navistar's 6.0-liter diesel engine, leading to Ford suing Navistar for manufacturing and supplying it.

25. The 6.4-liter engine, Navistar's next diesel engine produced for Ford, also had an EGR system and also was plagued with problems throughout model years 2008 through 2010—which led Ford to produce its own diesel engines after model year 2010. For model year 2010, Ford utilized an SCR system.

26. Despite experiencing the problems with the EGR system from 2004 through 2010, and despite losing Ford as a customer, Navistar continued producing EGR-based engines and selling them to its customers, including the Maxxforce Engines at issue here.

27. In the October 10, 2013, complaint filed in *Construction Workers Pension Trust Fund – Lake County and Victinity v. Navistar Int'l Corp.*, Civ. No. 1:13-cv-2111 (N.D. Ill. 2015) (Doc. No. 66), a case alleging securities violations, several "Confidential Witnesses" ("**CW**") are referenced—many of whom discuss problems with Navistar's EGR technology about which Navistar was aware, including:

>    (i)   CW2, a former Chief Engineer for the Navistar Engine Group on several Navistar truck and engine launches, who presented problems concerns about the EGR technology to Navistar's then-President and CEO, Daniel Ustian;
>
>    (ii)  CW3, a project development team leader for Navistar in its Fort Wayne, Indiana facility, claims to have been asked to assist in developing a fall-back SCR solution in case the EGR solution was unsuccessful. However, Navistar executives later ended this project;
>
>    (iii) CW5, a former Navistar Chief Engineer, who allegedly told his supervisors that the EGR technology was not achievable given fuel economy and performance parameters and the stage of EGR development at the time, and that the engineering community believed the physics of EGR was not possible;
>
>    (iv) CW8, a Navistar "Project Manager and Senior Project Manager" from 1997 through 2007, who noted that problems with a diesel particulate filter in the EGR engines would "stop up and shut down the engine as more exhaust flowed through the engine." This increase in exhaust gas recirculation also lowered fuel economy, decreased durability, and increased cooling demands on the engine;

    (v) CW12, "Navistar's Senior Vice President, North American Sales Operations," claims that Mr. Ustian told him directly not to discuss an alternate solution to the EGR technology or he would be fired;

    (vi) CW13, a Navistar employee from July 2008 to April 2013 who held various Vice President and managerial roles, claims that "[b]y mid-2011, the EGR solution engines were experiencing significant warranty issues." Mr. Ustian and other senior managers had access to these reports detailing the warranty issues;

    (vii) CW16, a Navistar employee from 2007 until 2012, claims it became apparent in 2011 that Navistar was experiencing an increase in the failure of EGR engine components—which was linked to an increase in exhaust gas flowing through the engine, and the resulting soot buildup; and

    (viii) CW18, a Navistar employee since July 2001, stated that the warranty problem was initially believed to be related to the EGR valve. However, even after the EGR valve's fix, warranty issues persisted through 2012, allegedly as a result of EGR cooler failure.

In other words, Navistar knew the Maxxforce Engines were defective before the first truck equipped with a Maxxforce Engine was ever sold. Nonetheless, Navistar failed to disclose the problems with the Maxxforce Engines.

  28. Numerous online complaints were lodged by Navistar Truck owners demonstrating the magnitude of the defective EGR System and its potential dangers, including (i) coolant leaking into the exhaust system, (ii) overheating issues, exhaust issues, wiring harness issues, and computer issues resulting in extended stays at repair facilities to identify and fix the problems, and (iii) the corresponding down time.

  29. The Maxxforce Engine exhaust pipes between the EGR valve and exhaust manifold leak, allowing exhaust fumes into the cab—which was the subject of an October 11, 2011 complaint filed with the NHSTA. Navistar Truck owners also regularly complained about exhaust leaks on the Internet.

  30. At the same time it paid hundreds of millions of dollars in warranty claims to replace defective parts with equally defective parts on its Maxxforce EGR Engines, Navistar (i)

touted its EGR technology as the future of emissions technology, and (ii) intentionally failed to disclose to disclose the defective EGR system were not fixable. Navistar blamed the defective EGR system and warranty claims on manufacturing problems (which it claimed to have resolved) and continued to portray the Engines as reliable.

31. Yet, these were the very problems Navistar had experienced with its EGR-based diesel engines since 2004. Navistar knew the problems would continue as -long-as Navistar stayed with the EGR system.

32. Plaintiff owns a 2011 International Prostar Truck with Maxxforce Engines containing the defective EGR System. Plaintiff's Truck experienced consistent EGR System failures and numerous Truck breakdowns. Despite taking the Trucks to Navistar authorized repair facilities the Engines continued to experience the same defective EGR System failures.

33. Neither Navistar, nor any of its dealers or representatives, informed Plaintiff of Navistar's defective EGR Systems and defective Engines. Had Plaintiff been told about the defective EGR System and defective Engines, Plaintiff would not have purchased the Truck or she would have paid less for it. The Truck is currently inoperable as a direct and proximate result of the defective EGR Systems and defective Engines.

34. As a direct and/or proximate result of the defective EGR System in the Maxxforce Engines in the Navistar Truck, Plaintiff has, inter alia, (i) suffered lost revenue due to having an inoperable Truck languishing in Navistar repair facilities waiting to be repaired, (ii) incurred out-of-pocket expenses it otherwise would not have incurred including, without limitation, expenses incurred in an attempt to repair the defective Truck, and house and feed stranded drivers, (iii) lost the benefit of its bargains, (iv) suffered substantially lower Truck trade-in and resale values

because the problems with the Engines are widely known and feared in the industry, and (v) suffered other injury and financial harm (and will continue to do so into the future).

35.     On information and belief, Navistar failed to disclose to customers, including Plaintiff, that coolant consumption caused by the defective EGR systems was outside the normal range.  In July 2012, Navistar finally announced it was abandoning Advanced EGR and adopting for the 2013 model year the same SCR technologies its competitors had used all along.

36.     Even after announcing its switch to SCR technology, Navistar continued to sell the Engines and knowingly failed to disclose to buyers that resale market demand for vehicles equipped with the defective Maxxforce Engines would be weak.

37.     In August 2012, while discussing Navistar's announcement that beginning in March 2013, Navistar would equip its International Trucks with SCR and abandon Advanced EGR, the Commercial Carrier Journal quoted Jack Allen, Navistar North American Truck Group president, downplaying any problems with the Advanced EGR engine Trucks; to wit, among other things, (i) "customers should not be hesitant to purchase an EGR-only MaxxForce equipped truck between now and March," and (ii)  "the resale value of EGR-only MaxxForce equipped trucks will prove to be temporary."

38.     The trucking industry is now well aware of the problems with the Engines.  Not only were the Trucks equipped with these Engines worth far less at the time of purchase than they would have been with an engine free from defects, the Trucks have a significantly diminished value on the resale market compared with competitors' trucks with similar mileage and are very difficult to sell.  Customers, like Plaintiff, who bought the Trucks with Maxxforce Engines are now stuck with an unfixable defective EGR system, dwindling or expired warranties, and a greatly diminished market for resale or trade-in of the used Trucks. This case has resulted.

## FIRST CAUSE OF ACTION:
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

39. The preceding factual statements and allegations are incorporated by reference.

40. At all relevant times, Navistar was (and continues to be) a merchant that sold and/or leased Trucks with defective EGR Systems in the Engines. Under the applicable law, the Engines were (and are) required to (i) be fit for the ordinary purposes for which engines are used, and (ii) pass without objection in trade for their description.

41. Navistar has not validly disclaimed, excluded, or modified the above-described warranty or duties—which are express and/or implied—and any attempted disclaimer or exclusion of such implied warranty was (and is) ineffectual.

42. The EGR Systems in the Engine in the Truck purchased by Plaintiff was defective at the time they left Navistar's possession. Moreover, Navistar knew about the defective Engines at the time the purchase and/or sale transactions occurred. Thus, the Engines, when sold, and at all subsequent times, were not in merchantable condition or quality, and not fit for their ordinary intended purpose.

43. Plaintiff has used the Engines in a manner consistent with its intended use and performed each and every duty required under the terms of the implied warranty, except as may have been excused or prevented by Navistar's above-described wrongful actions, inaction and/or omissions or by operation of law in light of Navistar's unconscionable conduct.

44. Plaintiff has had sufficient direct dealings with Navistar and/or its authorized dealers to establish any required privity of contract. Even then, privity is not required to assert this claim because Plaintiff is an intended third-party beneficiary of contracts between Navistar and its dealers; specifically, she is an intended beneficiaries of Navistar's express warranty. The dealers were not intended to be the ultimate consumers of the Engines, and have no rights under the

Navistar Engine warranties. The warranties were designed for, and intended to benefit, only the ultimate purchasers and lessees of the Trucks; to wit, Plaintiff.

45. Navistar's above-described wrongful actions, inaction and/or omissions, which directly and/or proximately caused Plaintiff to suffer economic damages and other actual injury and harm, constitute breach of the implied warranty of merchantability at statutory or common law for which Plaintiff seeks recovery from Navistar in an amount not less than $500,000.

## SECOND CAUSE OF ACTION:
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

46. The preceding factual statements and allegations are incorporated by reference.

47. Plaintiff, directly or indirectly, entered into contracts with Navistar to purchase Trucks with Engines, or otherwise were in contractual privity with Navistar and/or were in special relationships with Navistar in which Navistar was in a superior bargaining position because of its knowledge about the EGR Systems in the Engines in the Trucks as a result of the above-described express and/or implied warranties.

48. The above-described contracts and warranties were subject to the implied covenant that Navistar would conduct business with Plaintiff in good faith and would deal fairly with her.

49. Navistar's above-described wrongful actions, inaction and/or omissions, which directly and/or proximately caused Plaintiff to suffer economic damages and other actual injury and harm, constitute breach of the implied covenant of good faith and fair dealing at statutory or common law for which Plaintiff seeks recovery from Navistar in an amount not less than $500,000.

## THIRD CAUSE OF ACTION:
## NEGLIGENT MISREPRESENTATION

50. The preceding factual statements and allegations are incorporated by reference.

51. Navistar manufactured, distributed, sold Truck, directly or indirectly, to Plaintiff that it knew contained an inherently dangerous or defective condition (e.g., the defective EGR Systems in the Engines).

52. Navistar, in fact, manufactured, distributed, sold Truck to Plaintiff with the defective EGR Systems in the Engines after receiving substantial complaints about the systematic failure of the defective Engines.

53. Navistar, however, did not disclose to Plaintiff any information about the dangerous and defective EGR Systems in the Engine in the Truck Navistar sold or leased to Plaintiff, nor was the dangerous defect easily discoverable by Plaintiff prior to or at the time the Truck purchased.

54. Navistar omitted this information to induce Plaintiff to purchase and/or lease Trucks with the defective EGR Systems in the Engines.

55. Plaintiff justifiably relied on Navistar's omission in that she paid more for the Truck with the defective EGR Systems in the Engine than the Truck would have been worth had Navistar disclosed their defective and dangerous condition, or she would have purchased a different truck altogether.

56. Navistar's above-described wrongful actions, inaction and/or omissions, which directly and/or proximately caused Plaintiff to suffer economic damages and other actual injury and harm, constitute negligent misrepresentation at statutory or common law for which Plaintiff seeks recovery from Navistar in an amount not less than $500,000.

## FOURTH CAUSE OF ACTION:
## FRAUDULENT CONCEALMENT

57. The preceding factual statements and allegations are incorporated by reference.

58. Navistar omitted an existing fact about the Engine when it failed to disclose information regarding its dangerous and defective condition.

59. Navistar's omission was (and continues to be) material because the defective condition poses a serious safety issue to Truck owners and lessees, drivers, and to the general public.

60. The omission rendered Navistar's representations regarding the Engines false because the Engines, in fact, are defective and dangerous.

61. Navistar manufactured, distributed, sold and/or leased Trucks with the defective EGR Systems in the Engines despite knowing about their defective and dangerous condition.

62. Navistar intended that purchasers and lessees would rely on its omissions regarding the safety, reliability, and resale value of the Trucks with the defective Engines in order to bolster sales.

63. Plaintiff, was not aware of the defective condition and dangerous condition of the Engines, and could not reasonably have discovered the defective condition.

64. Plaintiff justifiably relied on Navistar's omission in that she paid more for the Truck with the defective EGR Systems in the Engine than the Truck would have been worth had Navistar disclosed their defective and dangerous condition, or she would have purchased a different truck altogether.

65. Plaintiff had the right to rely on Navistar's omissions that created the false impression the Truck was safe and reliable based on reasonable consumer expectations that the Engines would not be designed to fail under normal conditions of use, or would be substantially certain to fail before the end of their useful life.

66. Navistar had an affirmative duty to disclose the defective and dangerous condition of the Engines to consumers because they were in a superior position to know the true state of the

defect. Navistar had a duty to speak but reached its duty by failing to disclose the defective and dangerous condition of the Engine.

67. Navistar's above-described wrongful actions, inaction and/or omissions, which directly and/or proximately caused Plaintiff to suffer economic damages and other actual injury and harm, constitute fraud and fraudulent concealment at statutory or common law for which Plaintiff seeks recovery from Navistar in an amount not less than $500,000.

## FIFTH CAUSE OF ACTION:
## VIOLATIONS OF STATE CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACTS

68. The preceding factual statements and allegations are incorporated by reference.

69. Plaintiff is a "consumer" under the Texas consumer fraud and/or deceptive trade practices-consumer protection statutes by purchasing Truck with the defective EGR Systems in the Engine. Navistar is a "person" that may be sued under such consumer fraud and/or deceptive trade practices-consumer protection statutes for manufacturing, marketing, selling and/or leasing such Truck.

70. By its above-described unconscionable actions and/or unconscionable course of action, inaction and/or omissions, Navistar knowingly and intentionally engaged in an unconscionable course of action, in violation of such consumer fraud and/or deceptive trade practices-consumer protection acts and statutes, by failing to manufacture, sale, and/or lease properly performing and safe Engine—while, at the same time, knowingly, intentionally, and falsely representing the performance and safety of the Truck.

71. Navistar's above-described knowing and intentional wrongful actions, inaction and/or omissions unfairly took advantage of the lack of knowledge, ability, and experience of Plaintiff to a grossly unfair degree regarding the purchase of Truck with the defective EGR

Systems in the Engines; to wit, at the time Plaintiff purchased the Truck, she did not know, and had no way of knowing, nor did Navistar disclose, that the Engine was defective and unsafe. In fact, the opposite occurred.

72. Navistar's above-described knowing and intentional wrongful actions, inaction and/or omissions directly and/or proximately caused Plaintiff to suffer economic damages and other actual injury and harm, and collectively constitute violations of such consumer fraud and/or deceptive trade practices-consumer protection statutes. Had Navistar not engaged in such knowing and intentional wrongful actions, inaction and/or omissions, Plaintiff would not have suffered (and continue to suffer) economic damages and other actual injury and harm—for which she is entitled to recover monetary compensation in an amount not less than $500,000, injunctive relief, and her attorneys' fees, litigation expenses and court costs.

## SIXTH CAUSE OF ACTION: MONEY HAD AND RECEIVED/ASSUMPSIT

73. The preceding factual statements and allegations are incorporated by reference.

74. By its above-described wrongful actions, inaction and/or omissions, Navistar holds money conferred on it by Plaintiff for the purchase of Truck with the defective EGR Systems in the Engine. That said, Navistar has been unjustly enriched by the funds it received from Plaintiff that it should have spent to manufacture properly performing and safe Engines and/or repair the Engine so it would properly perform and be safe that, in equity and good conscience, belongs to Plaintiff and should be refunded, because Navistar failed to do so.

75. Navistar also continues to be unjustly enriched by, inter alia, (i) the saved cost of manufacturing properly performing and safe Engine, (ii) the shifted risk and expense of the defective and dangerous Engines to Plaintiff and (iii) the return on investment on all above-described amounts.

76. It would be inequitable, unconscionable, and unjust to permit Navistar to retain the benefit of these profits that it unfairly obtained from Plaintiff.

77. Navistar, therefore, should be compelled to refund (or disgorge) such wrongfully collected, saved back and/or shifted funds and expenses to Plaintiff under the common law equitable doctrine of money had and received and/or the duty to make restitution under the common law equitable doctrine of assumpsit for which Plaintiff seeks recovery from Navistar in an amount not less than $500,000.

## TOLLING OF THE STATUTES OF LIMITATION

78. The preceding factual statements and allegations are incorporated by reference.

79. **FRAUDULENT CONCEALMENT.** Navistar took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Trucks with the defective EGR Systems in the Engine. The details of Navistar's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff, and await further discovery. When Plaintiff learned about this material information, Plaintiff exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing her claims.

Navistar fraudulently concealed its above-described wrongful acts. Should such be necessary, therefore, all applicable statutes of limitation (if any) are tolled.

80. **EQUITABLE ESTOPPEL.** Navistar took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Trucks with the defective EGR Systems in the Engines. The details of Navistar's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and await further discovery. When Plaintiff learned about this material

information, Plaintiff exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing her claims. Navistar fraudulently concealed its above-described wrongful acts. Should such be necessary, therefore, all applicable statutes of limitation (if any) also are tolled under the doctrine of equitable estoppel.

81. **EQUITABLE TOLLING.** Navistar took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Trucks with the defective EGR Systems in the Engines. The details of Navistar's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and await further discovery. When Plaintiff learned about this material information, Plaintiff exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing her claims. Navistar fraudulently concealed its above-described wrongful acts. Should such be necessary, therefore, all applicable statutes of limitation (if any) also are tolled under the doctrine of equitable tolling.

## RELIEF REQUESTED

82. The preceding factual statements and allegations are incorporated by reference.

83. **ACTUAL, CONSEQUENTIAL, AND/OR INCIDENTAL DAMAGES.** As a direct and/or proximate result of Navistar's above-described wrongful actions, inaction and/or omissions, Plaintiff has sustained (and will continue to sustain) actual, consequential, and/or incidental damages in the form of, inter alia, (i) lost revenue due to an inoperable Truck languishing in Navistar repair facilities waiting to be repaired, (ii) out-of-pocket expenses it otherwise would not have incurred including, without limitation, expenses incurred in an attempt to repair the defective Truck, and pay, house, and feed stranded drivers, (iii) lost benefit of their bargains, (iv) substantially lower Truck trade-in and resale values, and (v) other actual injury and harm—for

which Plaintiffs are entitled to compensation. Alternatively, Plaintiff is entitled to restitution and/or disgorgement of Navistar's gross revenue from the sales and service of the Truck with defective EGR System and all other amounts by which Navistar has been unjustly enriched. All of the damages sustained by Plaintiff were reasonably foreseeable by Navistar. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred. Plaintiff seeks actual damages of not less than $500,000.

84. **PUNITIVE DAMAGES.** Navistar's above-described wrongful actions, inaction and/or omissions were committed intentionally, willfully, wantonly and/or with reckless disregard for Plaintiff's, rights and interests. Accordingly, Plaintiff is entitled to recover punitive damages from Navistar as punishment and to discourage such wrongful conduct in the future. All conditions precedent to Plaintiff's claims for relief have been performed or occurred.

85. **TREBLE AND/OR STATUTORY DAMAGES**. Plaintiff is also entitled to treble and/or statutory damages for Navistar's knowing, willful, intentional, wrongful and unconscionable conduct, in violation of the above consumer fraud and/or deceptive trade practices-consumer protection statutes. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

86. **ATTORNEYS' FEES, LITIGATION EXPENSES AND COURT COSTS.** Plaintiff is also entitled to recover she attorneys' fees, litigation, expenses, and court costs under, *inter alia*, the above consumer fraud and/or deceptive trade practices-consumer protection statutes and other relevant state statutes. All conditions precedent to Plaintiff's claims for attorneys' fees, litigation expenses and court costs have been performed and/or occurred.

WHERFORE, Plaintiff respectfully request that Navistar be cited to appear and answer this lawsuit, further request that upon final trial or hearing, judgment be awarded against Navistar, in favor of Plaintiff for:

(i) actual, consequential, and/or incidental damages to be determined by the trier of fact;

(ii) punitive damages;

(iii) treble and/or statutory damages;

(iv) all amounts by which Navistar has been unjustly enriched;

(v) pre- and post-judgment interest at the highest legal rates;

(vi) attorneys' fees, litigation expenses, and costs of suit incurred through the trial and any appeals of this case; and

(vii) such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all claims so triable.

Dated: June 25, 2019.

Respectfully submitted,

AKERLY LAW PLLC

By:   /s/ Bruce W. Akerly
Bruce W. Akerly
Texas Bar No. 00953200
Michael D. Gorman
Texas Bar No. 00793842

878 S. Denton Tap Rd., Suite 100
Coppell, Texas 75019
469-444-1878 Main
972-841-6769 Cell
bakerly@akerlylaw.com

ATTORNEYS FOR PLAINTIFF
BRENDA GRAHAM